IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

HARVINDER S. SANDHU, M.D., and )
KYPHON INC., )
 )
    Plaintiffs, )
 )
v. ) No. 05-2863 Ml/V
 )
MEDTRONIC SOFAMOR DANEK, INC., )
MEDTRONIC SOFAMOR DANEK USA, )
INC., and SDGI HOLDINGS, INC., )
 )
    Defendants. )
 )
 )
_____

**ORDER GRANTING PLAINTIFFS' MOTION TO ENJOIN DEFENDANTS FROM PROSECUTING DUPLICATIVE CLAIMS IN THE NORTHERN DISTRICT OF CALIFORNIA; ORDER DENYING DEFENDANTS' CROSS-MOTION TO DISMISS, STAY OR TRANSFER PLAINTIFFS' SECOND-FILED PATENT CLAIMS**
_____

Before the Court is Plaintiffs Harvinder S. Sandhu and Kyphon Inc.'s ("Plaintiffs'") Motion to Enjoin Defendants from Prosecuting Duplicative Claims in the Northern District of California, filed on April 26, 2006. In response, Defendants Medtronic Sofamor Danek, Inc., Medtronic Sofamor Danek USA, Inc., and SDGI Holdings, Inc. (collectively "Defendants" or "Medtronic") filed a Cross-Motion to Dismiss, Stay or Transfer Plaintiffs' Second-Filed Patent Claims on May 25, 2006. Plaintiffs filed an Opposition to Defendants' Cross-Motion to Dismiss, Stay or Transfer on June 1, 2006, and Defendants filed a Reply Memorandum in Further Support of its Cross-Motion to

Dismiss, Stay or Transfer Plaintiffs' Second-Filed Patent Claims on June 22, 2006. On June 29, 2006, Plaintiffs filed a Sur-Reply Memorandum in Opposition to Defendants' Cross-Motion. Finally, Plaintiffs filed a Notice of Decision on June 28, 2006, in order to inform the Court of an order issued to the parties from the Northern District of California.

For the following reasons, Plaintiffs' Motion to Enjoin is GRANTED. Accordingly, Defendants' Cross-Motion is DENIED.

**I. Background**

The present lawsuit involves Dr. Sandhu's inventions related to a directional bone tamp, a medical treatment for compression fractures of the spine. (Compl. ¶¶ 1, 17.) On November 23, 2005, Plaintiffs brought suit against Defendants, alleging trade secret misappropriation, breach of contract, as well as claims pursuing corrections of inventorship with respect to current and pending Medtronic patents. Plaintiffs allege that after Medtronic learned of Dr. Sandhu's inventions pursuant to a confidentiality agreement, it proceeded to apply, without permission and without naming Dr. Sandhu as inventor, for several patents covering Dr. Sandhu's inventions. At least one patent covering his inventions was granted to Medtronic. (Id. ¶ 1.) Plaintiffs also claim that Medtronic has incorporated Dr. Sandhu's inventions into its "Equestra Project," again without his permission, and is preparing to commercially launch the

2

Equestra product into the marketplace. (Compl. ¶¶ 1, 28, 34.) According to Plaintiffs, the Equestra product is a device for "treating vertebral compression fractures that included an expandable bone tamp and an injector for delivering cement into the void left by the bone tamp." (Id. ¶ 21.) Plaintiffs' original Complaint did not include any claims of patent infringement with respect to any Kyphon, Inc. ("Kyphon") patents.

On April 13, 2006, after there was an apparent unsuccessful attempt to resolve the matter amicably, Medtronic filed a new action against Kyphon in the Northern District of California. In the California suit, Medtronic (1) alleges that Kyphon has infringed four Medtronic patents (not at issue in the instant action), and (2) seeks a declaratory judgment that Medtronic has not infringed five Kyphon patents related to Kyphon's balloon tamp technology, and that these patents are invalid. Dr. Sandhu is not named as a defendant in the California suit. (Compl. for Patent Infringement and Declaratory J. ("Cal. Compl."), Apr. 26, 2006, Doc. 38-3.) More specifically, Medtronic's declaratory judgment claim in the California suit concerns a Medtronic device, referred to as an "osteotome," which, according to Medtronic, "effectively treats spinal disorders and VCFs [Verbal Compression Fractures] without the use of a balloon." (Cal. Compl., Doc. 38-3, ¶ 23.) Also according to Medtronic, "its

osteotome has certain advantages over Kyphon's balloon tamps, and thus represents a threat to Kyphon's market share in the treatment of the spine." (Cal. Compl., Doc. 38-3, ¶ 24.) It is undisputed that the "osteotome" referenced in the California suit is the same Equestra device at issue in the action before this Court.

Two weeks later, on April 26, 2006, on the same day that they filed their Motion to Enjoin, Plaintiffs in this case amended their Complaint, adding claims of patent infringement by Medtronic with respect to the same five Kyphon patents at issue in the California suit. Plaintiffs' Motion to Enjoin Defendants from Prosecuting Duplicative Claims is limited to the declaratory judgment portion of the California suit and does not address Medtronic's affirmative patent infringement claims against Kyphon.

**II. Analysis**

When duplicative lawsuits are pending in federal courts, the first-to-file rule, which is followed in the Sixth Circuit, is "the rule of thumb that [a]n entire action should be decided by the court in which the action was first filed." Smith v. S.E.C., 129 F.3d 356, 361 (6th Cir. 1997); see also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., 16 Fed. Appx. 433, 437 (6th Cir. 2001)(quoting In re Burley, 738 F.2d 981, 988 (9th Cir. 1984)(emphasis added))("The first-to-file rule is a well-

4

established doctrine that encourages comity among federal court of equal rank. The rule provides that when actions involving *nearly identical parties and issues* have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'"). As discussed more thoroughly below, the Court finds that the first-to-file rule should apply, and that applying the first-to-file rule to the instant action favors the entire action as set out in the Amended Complaint—including the claims alleging infringement of the Kyphon patents—being decided by this Court. As a result, Defendants are enjoined from prosecuting their declaratory judgment claims in California.

**A. First-to-File Rule -- Which Court Should Apply the Rule?**

As an initial matter, it is the court where the *action*—not any particular claim—is first filed which typically determines the applicability of the first-to-file rule. See, e.g., Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991)("[N]ormally [the argument as to which action should proceed] should be addressed to the court in the first-filed action."); Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1163-64 (10th Cir. 1982)(resolving the issue of "which court should make the determination on the ultimate issue of venue" and finding "that the court which first obtains jurisdiction should be allowed to first decide issues of venue").

5

Here, it is clear to the Court that the action presently before the Court, filed nearly five months before the California suit, was first-filed. Therefore, it is the task of this Court to decide whether the first-to-file rule favors enjoining the California suit or in the alternative, transferring the case to California.[1]

**B. First-to-File Rule -- When Does It Apply?**

For the first-to-file rule to apply "the parties and issues [must] *substantially* overlap." Fuller v. Abercrombie & Fitch Stores, Inc., 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005)(emphasis added). However, "[t]he parties and issues need not be precisely identical." Thomas & Betts Corp. v. Hayes, 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002)(citing Plating Resources, Inc. v. UTI Corp., 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999)).

In particular, three factors are considered in determining whether the rule applies: "'(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarities of the issues at stake.'" Thomas & Betts Corp., 222

---

[1] In further support of this Court deciding the issue, on June 23, 2006, the district court in Northern California issued an order on Medtronic's motion to deem the California suit first-filed. The district court found "that the Tennessee court should determine the question of [which action] is the 'first-filed,' as well as the related issue of whether Kyphon's patent infringement claims in Sandhu relate back to the November 23, 2005 filing date of the original complaint in Sandhu. Once the Tennessee court has ruled on those issues, this Court will rule on the parties' pending motions." (Order re: Pls.' Mot. to Deem this Action "First-Filed"; Def.'s Mot. to Dismiss, June 28, 2006, Doc. 67-2, at 1.)

6

F. Supp. 2d at 996(quoting Plating Resources, Inc., 47 F. Supp. 2d at 903-04).

**1. Chronology of the Actions**

The instant action was filed in late November 2005, almost five months before Medtronic filed its April 2006 action in California. See Plantronics, Inc. v. Clarity, LLC, 2002 WL 32059746, at *1 (E.D. Tenn. July 17, 2002)("For purposes of establishing the relevant chronology of events, we focus on the dates when the parties filed their original complaints."). Thus, the chronology of the actions favors the Plaintiffs in this case.

**2. Similarity of the Parties Involved**

Second, the parties in both cases are substantially similar. The primary difference is that the California suit includes four additional Medtronic-related parties not included in the instant action—Medtronic, Inc., Medtronic Vascular, Inc., Medtronic USA, Inc., and Medtronic Vascular Galway, LTD. Plaintiffs assert that these additional parties have been included in the California suit only with respect to Medtronic's affirmative patent infringement claims, not with respect to the declaratory judgment claims involved in the motion before the Court. Medtronic does not contest this point, and the Court does not find any evidence to the contrary. Moreover, as indicated by the Plaintiff, the remaining parties in the California suit appear to be "inter-related, wholly-owned subsidiaries and/or divisions of one

another." (Pls.' Mot. to Enjoin Defs. from Prosecuting Duplicative Claims in the Northern District of California, ("Pls.' Mot."), Apr. 26, 2006, Doc. 38-1, at 9.)

### 3. Similarity of the Issues at Stake

The final factor is the similarity of the issues at stake. The Sixth Circuit has found that

> a court abuses its discretion when it enjoins a party from proceeding in another suit that is not *truly duplicative* of the suit before it. "[T]he one must be materially on all fours with the other. . . . [T]he issues 'must have such an identity that a determination in one action leaves little or nothing to be determined in the other.'"

Smith v. S.E.C., 129 F.3d 356, 361 (6th Cir. 1997)(quoting Congress Credit Corp. v. AJC Int'l, Inc., 42 F.3d 686, 689 (1st Cir. 1994)).

It appears to the Court that the instant action and the declaratory judgment claims both arise out of the Defendants' Equestra project.[2] However, it was not until the Plaintiffs filed their Amended Complaint that Plaintiffs claimed patent infringement with respect to the five Kyphon patents at issue in

---

[2] Plaintiffs assert that the instant action, as described in the original Complaint, concerns "[Medtronic's] Equestra project, and how the design, functionality, use, development, patenting, and commercialization of the Equestra by [Medtronic] violated both Dr. Sandhu's rights as the inventor of that product, as well as his trust as someone who confidentially disclosed his inventions to [Medtronic] in 1999." (Pls.' Mot., Doc. 38-2, at 9-10.) The California declaratory judgment claims are also, according to Plaintiffs, "focused upon the same design, functionality, use, development and commercialization of the Equestra device." (Pls.' Mot, Doc 38-2, at 10.).

8

Medtronic's declaratory judgment claims in California.  Thus, the Memphis action and the California declarative judgment action are not "truly duplicative" in the sense that "a determination in one action leaves little or nothing to be determined in the other," unless the necessary comparison is between the claims in the Amended Complaint—not the original Complaint—and the declaratory judgment claims in California.[3]  Thus, the central question before the Court is whether it can look to the Amended Complaint to decide the similarity of issues between the two actions.

In cases where a complaint has been amended to add claims subsequently raised in a different forum, courts will often still give priority to the forum where the first complaint was filed. For example, in Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421, 422-23 (2d Cir. 1965), the original complaint had only included a claim for declaratory judgment of non-infringement and invalidity of a trademark.  After defendant brought a later suit in another district alleging both trademark and patent infringement, the plaintiff amended its complaint to "add a count for a declaratory judgment of non-infringement and invalidity of [a] patent." Id. at 423.  According to the court, "[t]he fact that these issues were not all spelled out in the [first] action until [plaintiff]

---

[3] Although it is true that the California action also includes claims of affirmative patent infringement by Kyphon, because those claims are not included in Plaintiffs' Motion to Enjoin, the Court finds it appropriate to analyze the California action only with respect to the declaratory judgment claims.

9

had amended its complaint is immaterial." Mattel, Inc., 353 F.2d at 424. The court, therefore, found that the suit should be tried in the forum where the first action was brought, that is, where the original complaint had been filed. Id.; see also GT Plus, Limited v. Ja-Ru, Inc., 41 F. Supp. 2d 421, 424 (S.D.N.Y. 1998)(applying the first-to-file rule "in favor of a plaintiff who amends his complaint to include issues that his adversary has raised in a second-filed suit in another district"); Donald C. Chisum, Chisum on Patents § 21.02[4][b]("The priority rule relates to the date of the filing of the action between the parties, not the date when the issues were added by amendment to the pleadings or otherwise.").

However, according to Defendants, "[t]he sole issue" for the Court is whether Plaintiffs' Amended Complaint "relates back" to the original Complaint under Fed. R. Civ. Pro. 15(c)(2). Defendants asserts that the Amended Complaint does not relate back, and as a result, Defendants' declaratory judgment claims in California are the first-filed and should be given priority. According to Defendants, this is because the new claims in the Amended Complaint do not "arise out of the same conduct, transaction or occurrence" as the claims in the original Complaint, as required under Fed. R. Civ. Pro. 15(c)(2). (Mem. in Supp. of (1) Defs.' Opp. to Pls.' Mot. to Enjoin the California Patent Action and (2) Defs.' Cross-Mot. to Dismiss,

Stay or Transfer Pls.' Second-Filed Patent Claims, May 25, 2006 ("Defs.' Mem."), Doc. 49-1, at 1.) The Court finds Defendants' assertion to be unpersuasive.

Even if this Court were required to find that the new claims of the Amended Complaint formally "related back" to the November 23, 2005 filing of the original Complaint under Rule 15(c)(2),[4] Plaintiffs have made a convincing argument to this effect. For an amendment to a pleading to relate back to the original pleading, "the claim or defense asserted in the amended pleading [must arise] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed R. Civ. P. 15(c)(2).

The strongest case Defendants cite in support of their position is Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, 587 F. Supp. 1112 (D. Del. 1984). In the case, Paine Webber brought a declaratory judgment action asserting non-infringement of a patent. As a counterclaim, Merrill Lynch pled patent infringement. Later, Merrill Lynch attempted to amend its pleading to include the counterclaim of trade secret misappropriation. In denying Merrill Lynch's motion to file an amended pleading under Rule 15, the district court

---

[4] Whether an amended complaint must formally "relate back" to the original complaint under Rule 15(c)(2) is not entirely clear under the present circumstances. See, e.g., SAES Getters S.p.A. v. Aeronex, Inc., 219 F. Supp. 2d 1081, 1090 (S.D. Cal. 2002).

found that

> [t]he [patent] claim asserted by Paine Webber and the trade secret misappropriation counterclaim of Merrill Lynch are not the same *nor is there any indication that there would be a duplication of evidence*. Paine Webber's claim is that the patents involved are invalid, unenforceable and not infringed. The transactions or occurrences involved in Paine Webber's claim are the activities of Merrill Lynch in obtaining its patents and Paine Webber's designing and implementing its computer hardware and software which supports its RMA system. On the other hand, the manner in which Paine Webber explained its RMA service to its brokers, the way it organized its offices to handle RMA accounts and its method of marketing those accounts have nothing to do with Paine Webber's claim that Merrill Lynch's patents are invalid, unenforceable and not infringed. It cannot be said that Merrill Lynch's unfair competition counterclaim arises out of Paine Webber's claim.

Paine, Webber, Jackson & Curtis, Inc., 587 F. Supp. at 1114(emphasis added). As a result, the court found that Merrill Lynch's proposed counterclaim was not a compulsory counterclaim under Fed. R. Civ. P. 13(a). While the claims for patent non-infringement and trade secret misappropriation in Paine, Webber, Jackson & Curtis, Inc. may not have required any "duplication of evidence," the inquiry is dependent on the facts of a case. In the instant case, the Court finds to the contrary with respect to the patent and trade secret claims alleged in the Amended Complaint.

Medtronic admits that "osteotome is at issue in both [the Memphis and the California declaratory judgment] actions." (Defs.' Mem., Doc. 49-1, at 8.) It further admits that "Dr. Sandhu is alleging that the osteotome was developed using his

12

1999 disclosure, while Kyphon is alleging that the osteotome infringes its patents." (Defs.' Mem., Doc. 49-1, at 8.) Thus, osteotome, or the Equestra project, is at the heart of both the trade secret and the patent claims before this Court. This Court finds Plaintiffs' discussion convincing:

> [A]ll the issues raised in the Amended Complaint unquestionably turn on the intimate details of the Equestra project and the resulting device. For example, the design, functionality and use of the Equestra, all of the documentary evidence that concerns such facts, and all of the dozens of [Medtronic's] Memphis-based witnesses familiar with these issues . . . are all relevant to the claims alleged in the original complaint concerning Equestra. *Simply put, if the Equestra differs sufficiently from Dr. Sandhu's invention, there would be no theft or breach of contract based on the commercialization of its different product.* . . . Similarly, the design, functionality and use of the Equestra, the same documentary evidence and the same witnesses, also are relevant to assessing the patent claims added via the Amended Complaint because such facts relate to whether the Equestra actually infringes the asserted Kyphon patents. Likewise, the development and patenting of the Equestra, the documents evidencing it and the witnesses familiar with it are also central to the original Memphis litigation, because [Medtronic] patented the Equestra without Dr. Sandhu's knowledge and permission, and described his invention in detail in its multiple patent filings. The same facts also relate to Kyphon's assertion of its patents because the very statements in [Medtronic's] own patent filings regarding the Equestra product's use to perform kyphoplasty are relevant to infringement of Kyphon's kyphoplasty patents. In short, [Medtronic's] Equestra project will be the centerpiece of both Plaintiffs' original and new claims in this suit.

(Doc. 53-1, at 7-8)(emphasis added). The Court thus finds that the patent claims asserted in the Amended Complaint arise "out of the conduct, transaction, or occurrence set forth or attempted to

be set forth in the original pleading." Therefore, Plaintiffs' Amended Complaint "relates back" to the original Complaint, and the "similarity of issues" factor also favors the application of the first-to-file rule to the instant action. Applying the first-to-file rule, the entire action as set out in the Amended Complaint—including the claims alleging infringement of the Kyphon patents—should be decided by this Court, where the action was first filed.

**C. Enjoining a Defendant from Proceeding with Later Filed Claims**

The affirmative authority to *enjoin* a defendant from proceeding with later filed substantively overlapping claims lies in the discretion of the federal district court in which the suit was first filed. See Smith v. S.E.C., 129 F.3d 356, 361 (6th Cir. 1997)(citing Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84 (1952))("When a federal court is presented with such a duplicative suit, it may exercise its discretion to . . . enjoin the parties from proceeding in the other suit."). Exercising the discretion of the Court, Medtronic is hereby enjoined from proceeding with its declaratory judgment claims filed in the Northern District of California.

**IV. Conclusion**

For the reasons stated, Plaintiffs' Motion to Enjoin is GRANTED. Accordingly, Defendants' Cross-Motion is DENIED.

14

Medtronic is ENJOINED from proceeding with its declaratory judgment claims filed in the Northern District of California.

So ORDERED this 7th day of November, 2006.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE